**SO ORDERED.**

**SIGNED August 29, 2018.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

```
          UNITED STATES BANKRUPTCY COURT
           WESTERN DISTRICT OF LOUISIANA


IN RE:

PADCO PRESSURE CONTROL, LLC                    CASE NO. 16-51381

     Debtor                                    CHAPTER 11
------------------------------------------------------------------
                     REASONS FOR DECISION
------------------------------------------------------------------
```

The present matter before the court is a request for sanctions filed by the duly-appointed Chapter 11 Trustee, John Luster (the "Chapter 11 Trustee"), the Official Committee of Unsecured Creditors, and Cross Keys Bank. The movants allege that Michael Carr and PADCO Energy knowingly and intentionally violated the orders of this court by embarking on a scheme to defraud creditors by mastering and hiding assets of the estate from the Chapter 11 Trustee and the creditors of the estate. Movants contend that, as a result, the estate has been harmed because the Chapter 11 Trustee did not have access to critical equipment and assets hidden by Carr

and PADCO Energy. The court took this matter under advisement following evidentiary hearings. The court now rules as follows.

**JURISDICTION**

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following Reasons for Decision shall constitute the court's findings of fact and conclusions of law.

**OVERVIEW OF THE RECORD**

PADCO Pressure Control, L.L.C. ("Debtor" or "Pressure") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 4, 2016. The Debtor remained a Debtor in Possession until September 26, 2017 when the court directed the appointment of a chapter 11 trustee. On September 29, 2017, John W. Luster was appointed as the Chapter 11 Trustee. The Debtor is owned by Michael Carr. A related entity, PADCO Energy Services, LLC ("Energy"), also owned by Mr. Carr, filed for chapter 11 on the same day as Pressure. Energy was converted to chapter 7 on January 30, 2018.

On September 26, 2017, a Consent Order was entered which addressed various pending matters. The parties to the Consent Order were Cross Keys Bank, Pressure, the United States Trustee and

the Official Committee for Unsecured Creditors. Paragraph B of the Consent Order provides that:

> PPC and one of its members, Carr, agreed on the record to deliver immediately to the Chapter 11 Trustee appointed in the PPC Case or his designee all the PPC equipment listed on Exhibits 1 and 2 introduced into the record of the PPC Case (D.E. 149, PPC Case). CKB and the UCC reserved all rights with respect to the determination of security interests, if any, in and to the PPC equipment listed on Exhibits 1 and 2.

On October 5, 2017, the Trustee filed a Motion for Turnover on the basis that Carr had failed to deliver the Pressure assets to him in violation of the Consent Order. The court held a hearing on the Motion for Turnover on October 12, 2017, at which time the court instructed both Energy and Carr individually to cooperate with the Trustee in determining which property belonged to Pressure and getting that property to the Trustee. The hearing was continued to November 7, 2018 to allow Energy and Carr to provide documentation regarding equipment which they asserted belonged to Energy but had been intermingled with Pressure equipment. At the hearing on November 7, 2017, the court expressed frustration that Energy and Carr had still failed to provide the requested documentation to the Trustee along with equipment which belonged to Pressure. The court continued the hearing to December 1, 2017 and also entered an Order to Show Cause why a chapter 11 trustee should not be appointed in the Energy case.

On December 1, 2017, another Consent Order was entered which both counsel for Energy and Pressure as well as Mr. Carr individually signed. Paragraph A of the Consent Order provides that:

> PPC and one of its members, Carr and any other person in custody, control or possession of any of the foregoing equipment, shall immediately deliver to the PPC Trustee or his agent or designee all the equipment listed on Exhibits 1 and 2 introduced into the record of the PPC Case (D.E. 149, PPC Case) at the hearing on September 12, 2017 which is described in said exhibits Page 3 of 8 as being PPC Equipment by the designation of "Pressure," but excluding the Bourque Equipment described below (the "Stipulated PPC Equipment"), as well as all of the equipment listed on Exhibit 3 to this Consent Order (collectively, the "Joint Inventory"), and the Trustee and his agent and/or designee may access certain property described in paragraph 9 of the Motion as the Minden yard, the Sibley yard and the Andrews yard, in order to secure possession of any of the items of the Stipulated PPC Equipment or the Joint Inventory. In the event any item of Stipulated PPC Equipment or Joint Inventory is in the custody, possession or control of another person or entity, Carr shall provide to the PPC Trustee information about the person or entity last known to have custody, possession or control of said goods, as well as the last-known location of said goods.

On January 12, 2018, the pending Motion for Sanctions, Civil Contempt, to Compel Compliance with Prior Court Orders and All Other Appropriate Relief Against Michael Carr and PADCO Energy Services, LLC ("Motion for Sanctions") was filed by the Chapter 11 Trustee, the Committee and Cross Keys Bank. In the motion, the moving parties assert that despite the Trustee's extensive efforts in traveling to various locations in multiple states, Energy and

Carr had only turned over **232 items** of equipment out of at least **7,592 items** of equipment identified in the orders, thus hindering the ability of the estate to generate income. Energy responded to the Motion for Sanctions. The response of Mr. Carr states that (1) all Pressure equipment in his possession or Energy's possession has been turned over; (2) the equipment at the yards in Andrews, Sibley and Minden identified as Pressure actually belong to Energy; (3) several pieces of equipment seized as belonging to Pressure actually belong to Energy; and (4) any equipment belonging to Pressure that was not turned over was either previously abandoned at job sites before the case was filed or was lost or stolen at various times.

On January 30, 2018, the moving parties presented the testimony of Robert Dempsey, who was assisting the Trustee in locating the equipment. Mr. Dempsey testified that Cross Keys Bank initially requested that he view and inventory certain items of equipment. He did so at three different locations: yards located in both Minden and Sibley, Louisiana, and a yard in Andrews, Texas. He produced an exhaustive list of the inventory he was able to locate at that time. The Trustee later requested that he secure the equipment after this court entered its order of turnover. He returned to the prior locations to secure the equipment and found that not all items were present. He was then advised to inspect a

different location in Big Lake, Texas, where he located some of the equipment previously at the Sibley yard. He was never able to locate and secure all of the equipment subject to the court's turnover order. Mr. Dempsey further testified that if he had been able to secure all of the equipment, the equipment could have been leased out in flowback packages for approximately $7,500 per day. In addition, Mr. Dempsey testified that the time and effort which he had put into the efforts to locate and secure the equipment totaled approximately $20,000 as of the time of the hearing.

On February 27, 2018, the moving parties presented the testimony of Robert Glass and Paul Butz. Mr. Glass is employed by a company called Bryce Transport, which did business with PADCO and Mr. Carr. Mr. Glass testified that he was instructed to assist Mr. Carr in moving equipment. Specifically, he testified that in late May or early June of 2017, he was instructed by Mr. Carr that someone was coming to inspect property and that there were 2 pieces of property that "didn't need to be photographed, and they needed to disappear." p. 9, lines 11-14. As a result, Mr. Glass moved those 2 pieces of equipment into a paint booth so that they would not be visible. Mr. Glass also testified that he assisted Mr. Carr in moving equipment from a yard in Minden to a yard in Sibley, where the equipment was then sandblasted and painted different colors to avoid inspection by Mr. Dempsey.

Mr. Butz is also an employee of Bryce Transport, who was also directed to assist Mr. Carr in his efforts to move and hide equipment. He testified that on December 7, 2017, he and a few others were performing an inventory. Mr. Carr advised him that "this stuff's got to be gone from here. It can't be here. The bank's coming in the morning. This stuff cannot be here." (Trial Transcript p. 25, lines 21-25 [Dkt. No. 228]). He testified that they then moved 140,000 or 150,000 pounds of equipment onto trucks and then spent several hours trying to find someone who would allow them to park the trucks for a few days on their land. When they were unable to find a place to park the trucks, they decided to simply park the trucks at the hotel where they were staying. (Id.) Several days later, the trucks were repacked and driven to different yard. Mr. Butz also testified that subsequent to that time, during an encounter with Mr. Carr, Mr. Carr threatened both he and another employee of Bryce Transport that if his name came out of their mouths that he would drag them down to his bankruptcy proceeding with him and then he attempted to physically attack them. (Trial Transcript, p. 28-29).

## DISCUSSION

The moving parties seek turnover of all equipment and also seek damages against Mr. Carr for willfully failing to turn over the equipment as previously ordered. They assert that damages are

Page 7

occurring due to the inability to use the equipment at the rate of $7,466 per day.

The court finds by clear and convincing evidence that Mr. Carr engaged in an elaborate scheme to move and conceal valuable equipment belonging to the estate and which the court specifically ordered to be turned over. While he was appearing at court hearings and claiming that he was fully cooperating with the efforts to locate and turn over all equipment, Mr. Carr was taking extensive steps to not only hide the property but to also repaint it so that it would not be discovered. He then argued to the court that the property had simply been lost or left at job sites. Mr. Carr deliberately misled the Chapter 11 Trustee and the court about the status of the estate's property.

The court finds Michael Carr in contempt for willfully violating the orders of the court. The court will impose sanctions in the amount of the damages suffered by the estate resulting from Mr. Carr's scheme. First, the court finds damages in the amount of $7,466 per day commencing with the date of the filing of the Motion for Sanctions and continuing to the date of these Reasons for Decision. This amount totals $1,717,180 through August 29, 2018. Second, the court finds damages in the amount of $20,000 for the cost of employing Mr. Dempsey to locate and secure the equipment which Mr. Carr continually concealed from the parties.

Although the court has on previous occasions ordered Mr. Carr to turn over all equipment of the Debtors, the court will once again order Carr to the turn over all equipment of the and property included in the prior orders which has not been turned over previously. All items shall be turned over within ten (10) days. If Mr. Carr fails to turn over the equipment listed in the prior orders, the moving parties may seek additional sanctions against him based upon the value of any property not turned over.

A Judgment in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###